UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 22-09727 |
| TAYLER J. STEWART, ) | |
| ) | CHAPTER 13 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| JOSEPH GIORDANO, ) | |
| ) | Adversary Proceeding No.: |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| TAYLER J. STEWART, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF
CERTAIN DEBT PURSUANT TO 11 U.S.C. § 1328(a)(4)**

Creditor, Joseph Giordano ("Giordano"), by counsel, pursuant to 11 U.S.C. § 1328(a)(4) and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure, hereby files and brings this *Complaint to Determine Nondischargeability of Certain Debt Pursuant to 11 U.S.C. § 1328(a)(4)* (the "Complaint") and requests that the Court determine that certain debt and obligations owed by Debtor/Defendant Tayler J. Stewart (the "Debtor") to Giordano are nondischargeable. In support of this Complaint, Giordano respectfully states as follows:

**I. THE PARTIES AND JURISDICTION**

1. Giordano is an adult individual residing in Marion County, Indiana.

2. The Debtor is a resident of the State of Illinois with an address listed on her voluntary petition [ECF No. 1] at 36950 N. Northern Avenue, Waukegan, Illinois 60085.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). To the extent it is determined that any part of this matter does not constitute a core proceeding, Giordano consents to this Court hearing and determining the matter pursuant to 28 U.S.C. § 157(c)(2); provided, however, Giordano reserves and preserves any and all arguments that the amount of damages owed to Giordano from the Debtor should be determined by the Indiana Court (as defined herein) and Giordano does not consent to this Court hearing or determining the amount of such damages.

## II. FACTUAL BACKGROUND

### A. The Debtor's Malicious and Willful Conduct

4. The Debtor and Giordano met online through two different dating applications. After communicating from a distance for a couple weeks by text messages and phone calls, the Debtor invited Giordano to drive from Indianapolis to Chicago for a first date.

5. On September 27, 2019, the Debtor and Giordano met at a restaurant near downtown Chicago, Illinois.

6. The next morning, the Debtor and Giordano exchanged numerous text messages.

7. On September 29, 2019, the Debtor messaged Giordano regarding her perception that Giordano had become distant and may not want to talk to her anymore:

> Also I need to say, I'm feeling a different vibe from you in how we communicated before we met. It seems a little harder to reach you and you're a bit more distant. I'm unsure as to why that is or if something has changed for you between Friday and now. If you're not interested in talking anymore I'd really appreciate if you'd let me know. I'm a little confused and don't want to push anything.

8. That same day, Giordano responded that they had only one date, and suggested that they were not romantically compatible:

We've only had one date. I'm interested in seeing you again, but maybe I'm one of the non compatible attachments in the book? Ha. I know you need more reassurance and sorry if I haven't been able to provide that.

9. On September 30, 2019, Giordano failed to respond right away to one of the Debtor's text messages. The Debtor sent Giordano a text message at 10:54 P.M. that same day, stating, "It was nice meeting you Joe! Best of luck in the future."

10. Approximately an hour and thirty minutes later, on September 30, 2019, Giordano received six phone calls from an unrecognized number with an Indianapolis area code ((317) 469-9725), which he did not answer, and a text message from the same number accusing him of rape and listing a recent address where he lived. Giordano continued to receive similar messages from anonymous phone numbers over the next few days.

11. Giordano's sister-in-law and Giordano's business partner also received text messages, claiming that Giordano had raped the Debtor (who was calling herself "Rachel").

12. The Debtor attempted to conceal her identity using a cell phone application that provides anonymous phone numbers during her participation in the acts alleged in this Complaint, including but not limited to defamation, using the phone numbers (317) 469-9725 and (833) 498-9420.

13. Using these phone numbers, the Debtor published false, defamatory, and offensive allegations directed at Giordano by contacting several of Giordano's friends, family, and business partners who reside in Marion County, Indiana. A true and accurate copy of some of these statements is attached hereto as **Exhibit A**.

14. For example, on October 1, 2019, the Debtor made the following false statements to Giordano's business partner via text message: "Hello. This message is for [REDACTED]. A protest will be held at your establishment, [REDACTED], to protest women against violence and

rape survivors. Your business partner, Joseph Giordano, has been accused of rape by a woman he met at your establishment. We will be contacting local news outlets as well. We will protest until justice is served! NO MORE RAPES! NO MORE SILENCE!"

15. On October 6, 2019, Giordano discovered that the Debtor had contacted his family members and made similar defamatory accusations.

16. For example, on October 1, 2019, the Debtor made the following false statement to Giordano's family member via text message: "Your brother in law Joe Giordano raped me. He is not the man you think he is. Be careful with him being around your sons."

17. In addition to publishing the defamatory statements to Giordano's friends, family, and business partners, the Debtor sent threatening and harassing text messages directly to Giordano stating, by way of example: "YOU RAPED ME! You ruined my life. I filed a police report against you and I'm sending it to your business partners REDACTED. You know what you did Joseph! I won't let you get away with this." "You know what you did!" "And everyone else will soon."

18. Giordano did not commit any of the actions the Debtor accused him of committing and denies any and all claims of this nature.

19. After receiving these messages, Giordano felt threatened, harassed, embarrassed, intimidated, and scared for his safety and well-being.

20. After learning that his friends, family, and business partners also received messages, Giordano felt threatened, harassed, embarrassed, intimidated, terrorized, and scared for his safety and well-being.

21. The Debtor's messages damaged Giordano's business relationships.

4

22. The Debtor's messages damaged Giordano's family relationships to the point where his family will no longer speak with him.

23. The Debtor's statements are false.

24. The Debtor's false statements have harmed and continue to harm Giordano.

25. Giordano has suffered mental and emotional harm, monetary loss, lost profits, lost opportunities, loss of clients, loss of goodwill and additional expenses as a direct result of the Debtor's false statements made to personal and business acquaintances.

26. The Debtor's false statements were published in Marion County, Indiana.

**B.    The Indiana State Court Litigation**

27. On December 24, 2019, Giordano initiated a lawsuit against Jane Doe and/or John Doe (Numbers 1-10), as the identity of the person sending the harassing text messages and phone calls was then unknown, by filing the *Complaint for Stalking, Intimidation, Harassment, Tortious Interference with Business Relations, Slander, Libel, and Seeking Restitution, Costs, Damages and All Other Equitable Relief* (the "Indiana Complaint") in the Marion County, Indiana, Superior Court (the "Indiana Court"), commencing Cause No. 49D06-1912-CT-053399 (the "Indiana State Court Action").

28. After learning that the Debtor was the person sending the harassing text messages and phone calls, on April 16, 2021, Giordano filed the *Amended Complaint for Stalking, Intimidation, Harassment, Tortious Interference with Business Relations, Slander, Libel, and Seeking Restitution, Costs, Damages and All Other Equitable Relief* (the "Indiana Amended Complaint") in the Indiana State Court Action to assert claims specifically against the Debtor.

29. On August 20, 2021, Giordano filed the *Second Amended Complaint against Tayler Jade Stewart, Jane Doe and/or John Doe, Numbers 1-10* (the "Indiana Second Amended

5

Complaint") in the Indiana State Court Action to assert claims against the Debtor for defamation, stalking, intimidation, harassment, and tortious interference with business relationship, and to seek compensatory damages, treble damages, and attorneys' fees. A true and correct copy of the Indiana Second Amended Complaint is attached hereto as **Exhibit B**.

30. On or around October 15, 2021, Giordano served Interrogatories, Requests for Admission, and Requests for Production (collectively, the "Written Discovery") on the Debtor. The Debtor has provided partial responses to the Written Discovery.

31. In the Indiana State Court Action, Giordano has conducted extensive third party discovery ("Third-Party Discovery").

32. On February 17, 2022, Giordano, through counsel, deposed the Debtor (the "Deposition") in connection with the Indiana State Court Action. The Deposition was abruptly ended by Debtor's counsel.

33. Giordano sought to continue the Deposition, which was opposed by the Debtor in the Indiana State Court Action.

C. **The Illinois State Court Action**

34. Giordano also separately filed an action against the Debtor in the Cook County, Illinois, Circuit Court (the "Illinois Court") under Case No. 21OP74873 (the "Illinois State Court Action") in order to obtain a stalking no-contact order.

35. In the Illinois State Court Action, the Illinois Court found that the Debtor stalked Giordano and, on July 12, 2022, entered a Stalking No Contact Order (the "No Contact Order"). A true and correct copy of the No Contact Order is attached hereto as **Exhibit C**. At a hearing in the Illinois Court on July 12, 2022, the Illinois State Court found that (i) "[the Debtor] admittedly created false identifies [sic] to barrage Mr. Giordano with unwelcome, numerous threatening texts

6

from unknown telephone numbers"; (ii) "[i]n [the Debtor's] own words, she wanted to cause [Giordano] humiliation and anger and call him out" (iii) "[the Debtor] admittedly surveilled Mr. Giordano and using her computer skills, engaged in electronic stalking, tracking him down to his own home address"; and (iv) "[the Debtor] purposely contacted [Giordano's] place of employment to clearly harass him and contacted a relative of his using a fake identify [sic]." A true and correct copy of the hearing transcript from the Illinois Court on July 12, 2022, is attached hereto as **Exhibit D**.

D. **The Chapter 13 Bankruptcy**

36. On August 26, 2022 (the "Petition Date"), the Debtor filed her voluntary petition for relief [ECF No. 1] (the "Petition") under chapter 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") commencing Case No. 22-09727 (the "Bankruptcy Case").

37. On August 31, 2022, the Debtor filed a *Notice of Suggestion of Bankruptcy* (the "Bankruptcy Notice") in the Indiana State Court Action.

38. Giordano learned about the Bankruptcy Case when the Debtor filed the Bankruptcy Notice in the Indiana State Court Action.

39. Prior to the filing of the Petition, Giordano had not yet completed discovery of the Debtor in the Indiana State Court Action, including the Deposition, Written Discovery, and Third-Party Discovery.

40. A judgment had not been entered in the Indiana State Court Action prior to the filing of the Petition.

41. On September 9, 2022, the Debtor filed schedules [ECF No. 9] in the Bankruptcy Case, which identified Giordano as a creditor of the Debtor with a disputed claim of an unknown amount.

42. December 2, 2022 was established as the deadline for creditors, like Giordano, to file a complaint to determine the dischargeability of debt(s) owed by the Debtor. [*See* ECF No. 6.]

### COUNT I
### Objection to Dischargeability of Debt Arising from
### Indiana State Court Action Pursuant to 11 U.S.C. § 1328(a)(4)

43. Giordano restates and incorporates the allegations set forth in paragraphs one (1) through forty-two (42) above, as if fully set forth at length.

44. Section 1328(a)(4) of the Bankruptcy Code provides, in relevant part, that an individual debtor may not obtain a discharge from any debt --

> for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

11 U.S.C. § 1328(a)(4).

45. Upon information and belief, the Debtor acted willfully and maliciously in committing the actions alleged in the Indiana Second Amended Complaint.

46. The damages sought by Giordano pursuant to the Indiana State Court Action, as alleged in the Indiana Second Amended Complaint, constitute damages in a civil action against the Debtor as a result of willful or malicious injury by the Debtor that caused personal injury to Giordano.

47. Therefore, the Debtor's debt to Giordano that is the subject of the Indiana State Court Action is not subject to discharge pursuant to 11 U.S.C. § 1328(a)(4).

48. The State Court Action alleges acts of defamation, stalking, intimidation, harassment, and tortious interference with a business relationship (the "Indiana State Court Action Allegations"). To the extent any of the Indiana State Court Action Allegations are found to be true and such conduct, acts and findings would result in any debt and/or obligation due and owing to Giordano by the Debtor to be nondischargeable under § 1328(a)(4) of the Bankruptcy Code, Giordano incorporates such conduct, acts and findings herein and reserves the right to amend this Complaint as appropriate.

WHEREFORE, Giordano respectfully requests that this Court grant Count I of this Complaint and determine that the Debtor's indebtedness to Giordano arising from an award of damages for the actions alleged in the Indiana Second Amended Complaint is nondischargeable pursuant to § 1328(a)(4) and grant such other, further and different relief as the Court deems appropriate.

## RESERVATION OF RIGHTS

49. Giordano reserves and preserves its right to amend this Complaint as new facts become available to the extent discovery and/or the Indiana State Court Action progresses against the Debtor.

[*Signature Page to Follow*]

Respectfully submitted this 1st day of December, 2022.

                        BARNES & THORNBURG LLP

                        /s/ *Gregory Gistenson*
                        Gregory Gistenson (ARDC # 6299856)
                        BARNES & THORNBURG LLP
                        One North Wacker Drive, Suite 4400
                        Chicago, IL 60606
                        Telephone: (312) 214-4573
                        Facsimile: (312) 759-5646
                        E-Mail: gregory.gistenson@btlaw.com


                        Jonathan Sundheimer (*pro hac vice to be filed*)
                        BARNES & THORNBURG LLP
                        11 S Meridian Street
                        Indianapolis, IN 46204
                        Telephone: (317) 236-1313
                        Facsimile: (317) 231-7433
                        Email: jonathan.sundheimer@btlaw.com


                        *Attorneys for Creditor Joseph Giordano*